**In re Vincent Robert O'CONNOR, Debtor.**

**Diane L. JENSEN, Plaintiff,**

v.

**Diane O'CONNOR, Defendant.**

**Bankruptcy No. 92–15802–9P7. Adv. No. 93–425.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Feb. 3, 1995.

Diane L. Jensen, Ft. Myers, FL, for plaintiff.

Robert L. Westheimer, Venice, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a claim set forth by Diane L. Jensen (Trustee) against Diane O'Connor (Ms. O'Connor) in a two-count complaint. In Count I the Trustee seeks to recover $50,000 which according to the Trustee is a voidable preference pursuant to § 547(b) of the Bankruptcy Code. The claim in Count II is based on the allegation of a fraudulent transfer and the Trustee seeks to recover the same amount pursuant to § 548(a)(2) of the Bankruptcy Code.

The facts are not in serious dispute, as they have been stipulated to by the parties in conjunction with a previous Motion for Summary Judgment filed by the Trustee. On July 14, 1994, this Court entered an Order and denied the Motion and held that the only issue which remained for resolution was whether or not the stocks sold by the Debtor and Ms. O'Connor were, in fact, the sole property of Ms. O'Connor, therefore the Debtor was not entitled to any part of the proceeds received from the sale. The facts which are without dispute as appear from the stipulation and from testimony are as follows:

Prior to the commencement of this case, the Debtor and Ms. O'Connor were married. This marriage was dissolved by a Final Decree entered by the Circuit Court of the Twentieth Judicial Circuit in and for Charlotte County, Florida which ratified a Separation and Property Settlement Agreement entered into between the parties on April 29, 1986. The Final Decree, in the relevant portions, awarded full ownership to the Debtor of certain lots referred to as Lots 11 and 12 on which a pub was operated under the name of the Bull & Bear Pub. Lots 7 and 10 were adjacent and contiguous to Lots 11 and 12 and were awarded to Ms. O'Connor. After the entry of the Divorce Decree, the parties reunited and lived together although they did not remarry.

Lot 7 was originally owned by Mr. and Mrs. Perry who conveyed title to the lot on April 24, 1987 to O'Connor Enterprises of

Florida, Inc., a Florida corporation (O'Connor Enterprises). On July 30, 1987, O'Connor Enterprises conveyed Lot 7 to the Debtor and Ms. O'Connor, as single persons. Lot 10 was originally owned by Mr. Owens and was conveyed to O'Connor Enterprises on April 24, 1987. Again, on July 30, 1987, O'Connor Enterprises conveyed the ownership of the lot to the Debtor and Ms. O'Connor, as a single persons. On December 16, 1987, the Debtor and Ms. O'Connor conveyed title to Lot 10 to O'Connor Enterprises and on the same date the title was reconveyed again to the Debtor and Ms. O'Connor. On October 7, 1991 all four lots, Lots 7, 10, 11 and 12 were transferred by the Debtor, a single man, and Ms. O'Connor, a single woman, by quit claim deed to Ms. O'Connor. There is no dispute that the Debtor received no consideration for the transfer of his interest in Lots 11 and 12.

It is without dispute that from February 26, 1990 until March 20, 1992 the Bull & Bear Pub was operated by a tenant. The Debtor and Ms. O'Connor filed a suit to remove the tenant from the property and sought damages for breach by the tenant of the lease. It is noteworthy that this action was brought in March 1992 by the Debtor and Ms. O'Connor even though by that time by virtue of the quit claim deed executed October 7, 1991, Lots 7, 10, 11 and 12, together with the improvements, were owned only by Ms. O'Connor.

On April 8, 1992, the Debtor and Ms. O'Connor formed a corporation, known as CoCo, Inc. of Englewood (CoCo) and on April 28, 1992 the four lots were transferred to this newly formed corporation by Ms. O'Connor. All shares in CoCo were issued fifty-fifty to the Debtor and to Ms. O'Connor respectively.

It appears that on October 1, 1992, the Debtor and Ms. O'Connor sold their respective shares in CoCo to Natalie and Michael Christy who paid $99,650 for the stock. Out of that amount, Ms. O'Connor settled the claim of a business broker and paid $12,100 to the broker and $3,035 to an attorney who represented her in the dispute with the business broker. She also loaned $5,000 to a friend, which loan was ultimately repaid with $2,500 paid to the Debtor and $2,500 to Ms. O'Connor. It is again without dispute that the Debtor did not receive any part of the proceeds obtained from the sale of the CoCo stock.

The claim for relief by the Trustee is based on three different theories. First, it is the contention of the Trustee that one-half of the proceeds obtained from the sale of the stock in CoCo rightfully belongs to the Debtor and, in turn, it is property of the estate and subject to administration by the Trustee. Second, if the appropriation of the Debtor's one-half interest in the proceeds was repayment, of an alleged debt owed by the Debtor to his former wife, Ms. O'Connor, this occurred within 90 days of the commencement of the case while the Debtor was insolvent thus this transfer is avoidable by the Trustee pursuant to § 547(b) of the Code. Third, in any event, so contends the Trustee, the Debtor received no adequate equivalent value for the transfer of his stock in which the Debtor had a one-half interest and the transfer occurred while the Debtor was insolvent thus the retention of the Debtor's share is avoidable as a fraudulent transfer pursuant to § 548(a)(2)(A) of the Code.

In opposing the claims of the Trustee, Ms. O'Connor contends that notwithstanding what appears on the relevant documents, she was, in fact, the equitable owner of Lots 10 and 11 notwithstanding that the same were awarded to the Debtor in the divorce because while they were married and even after the divorce when they lived together, she saved the property by expending large amounts of monies not only for the improvements of the property but also by making the mortgage payments in order to fend off a threatened foreclosure action which was a reality because the Debtor was seriously in default on the mortgage which encumbered Lots 10 and 11. It is contended by Ms. O'Connor that the transfer of the Lots to a newly formed corporation for which the Debtor and Ms. O'Connor received the stock was a real estate sale only and not a capital contribution.

Ms. O'Connor contends that the Debtor had no funds during the relevant time and only her funds were used to maintain and preserve the property and for this reason the

proceeds from the sale of the stock were rightfully hers and never property of the Debtor, notwithstanding the fact that the CoCo stocks were issued in the name of the Debtor and Ms. O'Connor and not Ms. O'Connor only.

Concerning the third contention of the Trustee first, which is based on the fraudulent transfer theory, the following should be noted.

Section 548 of the Bankruptcy Code provides in pertinent part, as follows:

§ 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor has or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

In the present instance, there is no doubt that the stock in CoCo was owned fifty percent by the Debtor and fifty percent by Ms. O'Connor. It is equally evident that the Debtor did not receive a dime from the monies paid by the Christys for the purchase of all outstanding shares in CoCo. The question then remains, however, whether the Debtor's interest in the CoCo stock was limited to bare legal title, or whether his interest was actually a cognizable ownership interest which, in turn, would entitle him to one-half of the proceeds realized from the sale. If the Debtor had an actual ownership interest, it is clear that the sale of the stock could be challenged by the Trustee as a fraudulent transfer pursuant to § 548 of the Bankruptcy Code. *In re Gillman,* 120 B.R. 219 (Bankr.M.D.Fla.1990). The facts presented in the present instance, although scarce, show that the Debtor was actively involved in the operation, maintenance and management of the property. The Debtor participated in operating the restaurant and bar on the property. Ultimately, both the Debtor and Ms. O'Connor jointly leased the pub and jointly filed a tenant eviction action when the lease was breached by the tenant. Finally, they were jointly involved in locating the Christys as a potential purchaser of the stock of the corporation and negotiated the stock purchase jointly.

Based on the foregoing, this Court is satisfied that the Debtor had more than bear legal title to the stock in the corporation, that there is no competent evidence in this record to establish that the use of the Debtor's funds obtained from the stock sale was repaying a bona bide loan to the Debtor by Ms. O'Connor. Lastly, it is clear that the Debtor received nothing in return for divesting himself of his one-half interest in the stock in question.

In sum, this Court is satisfied that the one-half of the stock in CoCo was in fact owned by the Debtor; that the Debtor received no consideration for his transfer and, lastly, this Court is satisfied that there is no competent evidence that the Debtor was in fact indebted to Ms. O'Connor. For this reason, it is unnecessary to consider whether or not this alleged repayment of a loan was or was not a voidable preference.

This Court is also satisfied that the transfer in fact was a fraudulent transfer within the meaning of § 548(a)(2)(A).

A separate final judgment shall be entered in accordance with the foregoing.